GRORUD, RESPONDENT, *v.* LOSSL ET AL., APPELLANTS.

(No. 3,314.)

(Submitted October 25, 1913.   Decided December 2, 1913.)

[136 Pac. 1069.]

*Malicious Prosecution—Corporations—Principal and Agent—*
*Malice — Presumptions — False   Imprisonment — Damages—*
*Pleadings—Evidence—Discharge—Instructions.*

Malicious Prosecution—Corporations.
   1.   An action for malicious prosecution lies against a corporation, as
well as against a natural person.
   [As to the liability of corporations for false imprisonment, see note
in 67 Am. St. Rep. 426; and as to their liability for malicious prosecu-
tion, see note in 59 Am. St. Rep. 595.]
Same—Agents—Liability of Corporation.
   2.   Where an agent of a corporation, in the discharge of his duties and
within the apparent scope of his authority, does an act from which a
third person suffers injury, the corporation is liable for the damages
flowing therefrom, even though the agent may have failed in his duty
to it or disobeyed its instructions; and, if the act is prompted by
fraudulent or malicious motives, the agent's fraud or malice is im-
putable to the corporation.
Same—Corporations—Officers—Presumptions.
   3.   Where the president of a mercantile corporation had instituted a
prosecution against one for larceny of its funds, the presumption arose
that he was acting in its behalf; in the absence of evidence, however,
that another corporation of which he was also president had any con-
nection with the larceny charge, it could not be presumed that he was
also proceeding in its behalf, and a motion for nonsuit as to the latter
corporation should have been sustained in an action for malicious
prosecution.
Same—Probable Cause—Malice—Presumptions.
   4.   While the plaintiff in an action for malicious prosecution must
prove both the want of probable cause and malice, in order to make a
*prima facie* case, the presence of the latter may be inferred by the
jury where the absence of the former has been established.
Same — Evidence—Sufficiency—Conflicting Evidence—Defenses—Consulting
Attorney.
   5.   Where the evidence as to the existence of probable cause for a
criminal prosecution consisted of conflicting statements made by the
plaintiff and the defendant, its credibility, with the inferences justly
deducible from it, was a matter for the jury; hence, having con-
cluded that the charge was without probable cause, they were justified,
under the rule declared in paragraph 4, *supra*, to infer that defendant
was prompted by malicious motives in preferring it, even though it
appeared that defendant had consulted a county attorney before acting.
Same—False Imprisonment—Distinction.
   6.   Where an arrest and imprisonment are brought about by legal
process but the prosecution is instituted and carried on maliciously

and without probable cause, it constitutes "malicious prosecution"; but if the arrest and imprisonment are accomplished without legal process, it is "false imprisonment," which gives a right of action whether prompted by malice or not.

Same—Arrest and Imprisonment—Presence of, not Indispensable—Instructions—Harmless Error.

7. A showing that plaintiff in an action for malicious prosecution was arrested, or imprisoned or held to bail is not indispensable, it being sufficient to sustain the action if it appears that he has maliciously and without probable cause been vexed and harassed by a criminal prosecution; hence, an instruction implying that proof of both arrest and imprisonment were necessary to warrant a verdict for plaintiff was error, but error in favor of defendant of which he was not in a position to complain.

Same—Damages Recoverable—Pleading—Mental Suffering.

8. In an action for malicious prosecution plaintiff is entitled to recover general compensatory damages for whatever injury he has suffered as the natural and necessary result of a charge of an infamous crime preferred against him by defendant; therefore, since mental anxiety and suffering flow naturally and directly from a groundless and malicious prosecution based upon such a charge, plaintiff need not specially plead damages in this regard in order to warrant recovery.

Same—Termination of Prosecution—Showing Necessity.

9. In an action for malicious prosecution, it must appear, by admissions in the pleadings or by the proof, that the prosecution on account of which plaintiff is suing is at an end.

Same—Discharge by Magistrate—Evidence of Want of Probable Cause—Instructions.

10. Where, after a full investigation of all the facts within the knowledge of the prosecuting witness, defendant prosecuted for a felony is discharged by a committing magistrate, such discharge is some evidence that the prosecution was groundless; hence, a requested instruction that the jury should consider the discharge only as evidence that the prosecution had terminated, but that it was not any evidence of a want of probable cause, was properly refused.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by A. A. Grorud against J. P. Lossl and others. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed as to defendants Lossl and the J. P. Lossl Company, and reversed as to defendant Divide & Gibbonsville Stage Company, with directions to dismiss the action as to it.

*Messrs. Breen & Jones* and *Mr. Jos. C. Smith,* for Appellants, submitted a brief; *Mr. Peter Breen* argued the cause orally.

*Messrs. B. K. Wheeler, M. F. Canning* and *P. E. Geagan,* for Respondent, submitted a brief; *Messrs. Wheeler* and *Canning* argued the cause orally.

The issue in this case is whether or not the defendants maliciously and without probable cause caused the arrest or prosecution of the plaintiff. In *Herzog* v. *Graham,* 9 Lea (Tenn.), 152, the court said: "Malicious prosecution is the procuring *the arrest* or *prosecution* under the lawful process on the forms of law, but from malicious motives and without probable cause." A clear and concise statement of the distinction between false imprisonment and malicious prosecution is to be found in the case of *Colter* v. *Lower,* 35 Ind. 285, 9 Am. Rep. 735, wherein it was observed that if the imprisonment is under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution. If it has been extrajudicial without legal process, it has been false imprisonment.

Anxiety and suffering should be taken into consideration by the jury in awarding damages in all cases of malicious prosecution. In the case of *Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33, the court said: "The amount awarded is, to say the least, a moderate allowance for the humiliation and shame presumably suffered by the plaintiff by reason of a groundless charge of felony made against him." The party injured by reason of malicious prosecution is entitled to adequate compensation covering all the elements of the particular injury. Such elements of damage include loss of time, injury to fame, reputation, character and health, mental suffering, *etc.* (26 Cyc. 62.) Mental suffering, although not arising from bodily suffering, is an element of damage and malicious prosecution. (*McKinley* v. *Chicago etc. R. Co.,* 44 Iowa, 314, 24 Am. Rep. 748; *Flam* v. *Lee,* 116 Iowa, 289, 93 Am. St. Rep. 242, 90 N. W. 70; *Wheeler* v. *Hanson,* 161 Mass. 370, 42 Am. St. Rep. 408, 37 N. E. 382; *Cohn* v. *Saidel,* 71 N. H. 558, 53 Atl. 800.)

The great weight of authority is that the discharge of a person at a preliminary hearing by a justice of the peace is *prima*

*facie*, though not conclusive, evidence of want of probable cause. (26 Cyc. 38; *Plassan* v. *Louisiana Lottery Co.*, 34 La. Ann. 246; *Frost* v. *Holland*, 75 Me. 108; *Rosenkranz* v. *Hass*, 1 Misc. Rep. (N. Y.) 220, 20 N. Y. Supp. 880; *Smith* v. *Ege*, 52 Pa. 419; *Madison* v. *Pennsylvania R. Co.*, 147 Pa. 509, 30 Am. St. Rep. 756, 23 Atl. 764; *Jones* v. *Finch*, 84 Va. 204, 4 S. E. 342; *Vinal* v. *Core*, 18 W. Va. 1; *Eggett* v. *Allen*, 119 Wis. 625, 96 N. W. 803.) And the rule was approved of in *Fox* v. *Smith*, 26 R. I. 1, 3 Ann. Cas. 110, 57 Atl. 932, where the court said it seemed to be the generally accepted doctrine of the courts of this country. In Missouri it is held that a discharge by an examining magistrate is persuasive evidence that the prosecution was groundless. (*Brant* v. *Higgins*, 10 Mo. 728; *Sharpe* v. *Johnston*, 76 Mo. 660.) But the court below in this case did not even go so far as to say it was *prima facie* evidence but simply refused to instruct the jury that it was no evidence, and we submitted that it not only was some evidence, but by the weight of authority is *prima facie* evidence.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for malicious prosecution. The plaintiff had verdict and judgment. The defendants have appealed from the judgment and an order denying their motion for a new trial.

On behalf of the defendants the contention is made that the court erred in denying their separate motions for nonsuit, because it was not shown that either of the corporations authorized or had any connection with the prosecution on account of which this action was brought, and because the evidence failed to disclose that Lossl acted without probable cause. The contention is also made that the evidence is insufficient to justify the verdict, and that the court committed prejudicial error in charging the jury.

The prosecution of plaintiff arose out of the following circumstances: For the twenty-two months prior to June 12, 1911,

the plaintiff had been employed at Divide, in Silver Bow county, as the agent of the Oregon Short Line Railway Company and also of the American Express Company. The defendant J. P. Lossl Company was, during the same time, engaged in a general merchandise business at Wisdom and Dewey, some distance to the west of the line of railway, in Beaverhead county. The Divide & Gibbonsville Stage Company was engaged in the transportation of freight and passengers from Divide to Wisdom and other points to the west. J. P. Lossl was the president and manager of both corporations, and controlled their business. Goods purchased by the merchandise corporation were received at Divide and conveyed by the other corporation to Wisdom and Dewey. To provide for the payment of freight and express charges, the defendant Lossl would, from time to time, send to the plaintiff checks drawn in favor of the railway or express company—oftener in favor of the former—upon the bank at which the deposits of the defendant corporations were kept, usually amounting to $150 at a time. In some instances a single check for this amount was sent, in others two or three checks aggregating this amount, and in others the amount would be larger, according to the amount of the charges to be met at the particular time. The sums thus sent covered also the compensation of plaintiff for the accommodation extended to the defendant corporations. This was fixed at $15 per month. The plaintiff kept an account of the transactions between himself and the defendant corporations. In making his monthly remittances to the accounting officers of the railway and express companies, he would send the checks, which were accepted by these companies as cash, and collected in due course from defendants' bank. At the end of each month plaintiff remitted to Lossl a statement, which was supposed to contain a list of all the checks received by him on account of either of the defendant corporations, as well as of the items of charges in favor of the railway and express companies. Usually this statement showed a balance in favor of the defendant corporations. This course of business was pursued for the twenty-two months during which

the plaintiff was employed. During the early months of 1911 defendant Lossl, upon an examination of the accounts of the defendant corporations, discovered that, out of the whole number of checks received by the plaintiff, the latter had failed to account for several, the aggregate amount of which he did not then know exactly. The amount was then thought by him to be more than $1,000. Thereupon, after consultation with the county attorney of Silver Bow county, he caused the arrest of the plaintiff on a charge of larceny as bailee of moneys belonging to the J. P. Lossl Company to the amount of $1,000. The arrest was made on June 12, 1911, on a warrant issued upon a complaint filed with a justice of the peace. Plaintiff was held until he was admitted to bail. At a preliminary hearing thereafter had by the justice, the plaintiff was discharged.

At the trial plaintiff testified that during the time he was acting as agent for the defendant corporations, the defendant Lossl frequently had need of various sums in cash to be used by him personally, or in connection with the business of the corporation, that it was inconvenient for him to obtain cash from the bank, which was at Deer Lodge in Powell county, and that he would on such an occasion draw a check against the account of one or the other of the defendant corporations in favor of the railway or express company, and have plaintiff advance the amount of it in cash out of the funds in his hands belonging to the company to which it was made payable. These checks he said were not included in his monthly statements because they had no connection with the payment of freight and express charges, and hence were properly omitted. There were in all twenty-six of such checks not accounted for. The aggregate amount of them was $2,000. Most of them had been drawn against the account of the J. P. Lossl Company. There was some testimony which corroborated these statements. The claim of Lossl was that all of the checks sent by him were intended to meet freight and express charges, that he never asked for nor received any accommodation from plaintiff in the way of cash advanced upon checks, and that plaintiff appropriated to his

own use the amount of the checks omitted from the statement, trusting that Lossl or the accountants of the corporations would not discover his thefts. The evidence introduced by the defendants tended to show that there was substantial foundation for this claim, but the jury refused to accept it.

1. We think the court erred in denying the motion of the Divide & Gibbonsville Stage Company. Though the defendant Lossl was its president and manager, it was not suggested by anything in the evidence that it had any connection with the prosecution of the plaintiff, or that Lossl instituted the prosecu-[1] tion in its behalf. It is settled law that an action for malicious prosecution will lie against a corporation as well as against a natural person. (*Weaver* v. *Montana C. Ry. Co.,* 20 Mont. 163, 50 Pac. 414; *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138; *Boogher* v. *Life Assn. of America,* 75 Mo. 319, 42 Am. Rep. 413; *Reed* v. *Home Savings Bank,* 130 Mass. 443, 39 Am. Rep. 468; *Williams* v. *Planters' Ins. Co.,* 57 Miss. 759, 34 Am. Rep. 494; *Carter* v. *Howe Machine Co.,* 51 Md. 290, 34 Am. Rep. 311; *Goodspeed* v. *East Haddam Bank,* 22 Conn. *530, 58 Am. Dec. [2] 439.) By the great weight of authority it is also the rule that when an agent of a corporation in the course of the discharge of duties intrusted to him by it, and within the apparent scope of his authority, does an act from which a third person suffers injury, the corporation also is liable for the damages flowing therefrom, even though the agent may have failed in his duty to the principal, or may have disobeyed his instructions. (*Rand* v. *Butte Electric R. Co.,* 40 Mont. 398, 107 Pac. 87; *Golden* v. *Northern Pac. R. Co.,* 39 Mont. 435, 18 Ann. Cas. 886, 34 L. R. A. (n. s.) 1154, 104 Pac. 549; *Callahan* v. *Chicago etc. R. Co.,* 47 Mont. 401, 133 Pac. 687; *Weaver* v. *Montana C. Ry. Co., supra.*) If the act is prompted by fraudulent or malicious motives, the fraud or malice of the agent is imputable to the corporation. (*Reed* v. *Home Savings Bank, supra; Vance* v. *Erie Ry. Co.,* 32 N. J. L. 334, 90 Am. Dec. 665; *Wheless* v. *Second Nat. Bank,* 1 Baxt. (Tenn.) 469, 25 Am. Rep. 783; *Carter* v. *Howe Machine Co., supra; Williams* v. *Planters' Ins.*

*Co., supra; Philadelphia W. & B. R. R. Co.* v. *Quigley,* 21 How. (U. S.) 202, 16 L. Ed. 73.). The prosecution having been in-[3] stituted by Lossl on behalf of the mercantile corporation— that is, to bring the plaintiff to justice for the alleged larceny of its funds—the presumption does not attach that he was acting for the stage company also, although he was its president, and although it appeared incidentally in the evidence that a few of the checks not accounted for were drawn upon its account. It was no more responsible for the ·prosecution than would have been any other corporation of which Lossl happened to be president and manager. The situation with reference to the other corporation is entirely different. Upon the face of the proceedings the presumption arises that Lossl was acting for it, for the subject of the larceny was its property, and as its president and manager, he was the proper person to institute the prosecution in its behalf.

The motion of Lossl was properly denied. At the close of plaintiff's case the evidence tended to support the claim of plaintiff that he had cashed the checks, not accounted for in his monthly settlements, solely for the accommodation of the defendant. If this was the fact—and for the purposes of the motion it was to be accepted as a fact—the prosecution was wholly without probable cause. This condition of the evidence warranted an inference of malice, for all the authorities agree that, while the [4] plaintiff must prove both the want of probable cause and malice in order to make a *prima facie* case, they also agree that when the absence of the former has been established, the presence of the latter may be inferred. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33.) It being the office of the jury to draw this inference under proper instructions, the motion was properly denied.

2. Counsel for defendants have devoted most of their printed argument to a discussion of the evidence, insisting earnestly that the explanation offered by the plaintiff as to why his monthly statements did not include the missing checks is so palpably improbable that it does not furnish any substantial support for

the verdict, especially so in face of the denial by defendant [5] Lossl that he ever obtained cash from the plaintiff for any purpose. Owing to the nature of the transactions between the plaintiff and the defendant, knowledge of them could not be had by others. Therefore, aside from the evidence showing that the prosecution had been terminated; that the defendant had consulted counsel before instituting it, and some circumstances corroborative of the conflicting stories told by the plaintiff and the defendant themselves—the jury were left to determine from these narratives alone where the right of the controversy lay. Of course, if the jury had accepted the story told by the defendant, the inevitable conclusion would have been that the plaintiff was guilty of the charge of larceny made against him, or, in any event, that the prosecution had not been instituted without probable cause. On the other hand, having accepted the story told by the plaintiff, with the legitimate inferences to be drawn from it, the jury were justified in concluding that the charge made was wholly without probable cause; and, having so concluded, they were at liberty to infer that in preferring the charge the defendant was prompted by malicious motives. And although in this character of action it is a complete defense that the defendant acted in good faith and upon the advice of counsel learned in the law, after fully and fairly laying the case before him, the court has no right and will not undertake to pass upon the credibility of the evidence with the inferences which the jury might be justified in drawing from it in this behalf. (*Martin* v. *Corscadden, supra; Cohn* v. *Saidel,* 71 N. H. 558, 53 Atl. 800; Newell on Malicious Prosecution, sec. 7.) In exercising the discretion lodged in it by law, the district court accepted the verdict of the jury and denied the motion for a new trial. It is not within our power to interfere, even though upon an analysis of the evidence we might entertain the view that the defendant ought to have prevailed.

3. Instructions numbered 2 and 3 submitted to the jury are the following:

" (2) If the jury believe from the evidence that the defendant [6, 7] caused the arrest and imprisonment of the plaintiff without probable cause and maliciously, as alleged in plaintiff's complaint, then they will find for the plaintiff, and may assess his damages, if any were sustained, at such sum as they think proper, from the facts and circumstances in the case, not exceeding the sum of $49,760.

" (3) The court instructs the jury that if you believe that the plaintiff was arrested and imprisoned by the defendant upon mere guess, or that the proceedings taken against him were commenced recklessly, and without exercising that care and caution necessary to justify a prudent man in commencing a criminal prosecution against another, then I instruct you that the arrest and imprisonment was without probable cause."

Counsel insists that these instructions wrought prejudice to the defendants, because the issue being tried was whether the defendant had maliciously prosecuted the plaintiff, not whether he had maliciously caused plaintiff's arrest and imprisonment, and that the court unduly emphasized mere incidents of the prosecution. The distinction between malicious prosecution and false imprisonment is this: If the arrest and imprisonment are brought about by legal process, but the prosecution has been instituted and carried on maliciously and without probable cause, it is malicious prosecution. If the arrest and imprisonment have been accomplished without legal process, it is false imprisonment. (*Colter* v. *Lower,* 35 Ind. 285, 9 Am. Rep. 735; *Herzog* v. *Graham,* 9 Lea (Tenn.), 152; 26 Cyc. 8.) The latter is an unlawful violation of the personal liberty of another (Rev. Codes, sec. 8324), and is the subject of an action whether the wrongful act is prompted by malice or not. There is some diversity in the decisions on the subject, but the weight of authority seems to be in favor of the view that in an action for malicious prosecution it is not indispensable that the plaintiff show that he was arrested or imprisoned or was held to bail, and that it is sufficient to sustain the action if it appears that the plaintiff has maliciously and without probable cause been vexed and harassed

by a criminal prosecution. Whether the action will lie for the malicious prosecution of a groundless civil suit we need not now consider. The evidence shows that the plaintiff suffered both arrest and technical imprisonment. In drawing the attention of the jury to these facts the court seemed to indicate an opinion that proof of them was indispensable. This was error, but was error in favor of the defendants rather than against them, and therefore was not prejudical because it cast a greater burden upon the plaintiff than he was required to sustain. Furthermore, in view of other portions of the charge, wherein the court defined clearly and correctly the rule of law applicable, we do not think the jury were misled.

In instruction No. 4 the jury were told that if they found for the plaintiff, they should award him damages in such an amount as would compensate him for the injury sustained, including loss of time, "his anxiety and suffering," *etc.* It is argued [8] that since the complaint does not allege specially damages accruing from mental suffering, the instruction permitted the jury to consider an element of damage which was wholly without the issues. It is not clear what the court meant by the expression "anxiety and suffering," but upon the assumption that it refers to mental suffering, the contention is without merit. In such an action the plaintiff is entitled to recover general compensatory damages for whatever injury he has suffered as the natural and necessary result of the charge made against him by the defendant. Bodily pain and suffering are the natural result of bodily harm, and compensation for them comes under the head of general damages. So mental anxiety and suffering flow naturally and directly from a groundless and malicious prosecution upon a charge of an infamous crime, the very foundation of which is the indignity inflicted by it; special allegations on the subject are therefore unnecessary. (*Shatto* v. *Crocker,* 87 Cal. 629, 25 Pac. 921; *Lytton* v. *Baird,* 95 Ind. 349; 13 Ency. Pl. & Pr. 452; 2 Sutherland on Damages, sec. 421.)

Counsel for the defendants requested the court to instruct the jury that the fact that the plaintiff had been discharged by

the justice of peace was not any evidence of a want of probable cause for the criminal prosecution, and could be considered by them only as evidence that the prosecution had terminated. The request was refused. Counsel insist that the refusal was prejudicial error, and cite *Martin* v. *Corscadden, supra,* as conclusive of their contention. The case is not in point. The court there held that the portion of the justice's docket containing a finding that the prosecution was groundless, and adjudging the costs against the prosecuting witness, was inadmissible because it was in effect a judgment upon the very question at issue, *viz.,* whether the prosecution was without probable cause and malicious. This is not a holding that the discharge by the justice was not any evidence of a want of probable cause. It [9] must appear by admissions in the pleadings or from the plaintiff's evidence, that the prosecution on account of which he is suing for damages is at an end, otherwise he has failed to make out a case for the jury. The complaint in this case alleges, and the answer admits, that the proceeding before the justice terminated by a discharge of the plaintiff. The necessity for the introduction of evidence on the subject was therefore dispensed with. The rule prevails in most jurisdictions that this fact, when shown, is *prima facie* evidence of a want of probable cause. (*Plassan* v. *Louisiana Lottery Co.,* 34 La. Ann. 246; *Straus* v. *Young,* 36 Md. 246; *Frost* v. *Holland,* 75 Me. 108; *Madison* v. *Pennsylvania Ry. Co.,* 147 Pa. 509, 30 Am. St. Rep. 756, 23 Atl. 764; *Jones* v. *Finch,* 84 Va. 204, 4 S. E. 342; *Vinal* v. *Core,* 18 W. Va. 1; *Bigelow* v. *Sickles,* 80 Wis. 98, 27 Am. St. Rep. 25, 49 N. W. 106; *Fox* v. *Smith,* 26 R. I. 1, 3 Ann. Cas. 110, 57 Atl. 932; *Sharpe* v. *Johnston,* 76 Mo. 660; *Chapman* v. *Dodd,* 10 Minn. 350 (Gil. 277); 26 Cyc. 38.) In *Davis* v. *McMillan,* 142 Mich. 391, 113 Am. St. Rep. 585, 7 Ann. Cas. 854, 3 L. R. A. (n. s.) 928, 105 N. W. 862, the supreme court of Michigan disapproves the doctrine of these cases, and declares it to be the better view that the fact of the discharge by the justice, standing alone, is no evidence of a want of probable cause. We shall not at this time enter into a discussion of the merits of these

**[10]**    different views.    We are of the opinion that where, as in this case, the order of discharge has been made after a full investigation of all the facts within the knowledge of the prosecuting witness, it is some evidence at least  that the prosecution was groundless.    From this point of view the requests of the defendants were properly refused.

The one remaining assignment made by counsel we do not think of sufficient merit to demand special notice.

As to the Divide & Gibbonsville Stage Company, the judgment and order are reversed, and the district court is directed to dismiss the action.    As to the other defendants, the judgment and order are affirmed.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER  concur.