CHRISTIAN LUX, a Minor, by Jacob Lux, His Guardian Ad Litem, Respondent, v. GOTTLIEB BENDEWALD, Appellant.

(227 N. W. 550.)

Opinion filed October 22, 1922.   Rehearing denied December 10, 1929.

*I. A. Mackoff, H. P. Remington* and *J. K. Murray,* for appellant.

*Lauder, Heder & Lauder* and *Wishek & Wishek,* for respondent.

Burr, J. The families to which the parties belong are neighbors, living about a mile apart, and in December, 1926, the defendant signed a complaint against the plaintiff before a justice of the peace of the county of McIntosh charging the plaintiff with the crime of forgery in the third degree. A warrant for arrest was issued; the defendant waived a preliminary examination; was held to answer to the district court upon said charge and gave bail for his appearance. An information was filed against him in the district court; the case was presented to the jury, and in November of 1927 the plaintiff was found not guilty.

The plaintiff then commenced this action to recover for malicious prosecution and in his complaint set forth the making of complaint, the arrest, the favorable termination and then alleged that the defendant, in procuring the issuance of the warrant, "acted wrongfully, wantonly,

maliciously and without probable cause, and with intent to injure, degrade and defame plaintiff; that the plaintiff was bound over to the district court upon said charge."

The plaintiff charged further that he was damaged in his standing in the community and in his reputation, was injured by the charge and the prosecution and so asks for damages in the sum of $10,000 including his costs and expenses in defending the criminal action. There is no demand in the complaint for exemplary damages. The answer of the defendant is a general denial. The case was submitted to a jury who returned a verdict for the plaintiff in the sum of $1,000. The defendant made a motion for a new trial; but before the motion could be heard the trial judge died. The motion was submitted to another judge who states that owing to the fact that "this court did not hear the evidence . . . and the reluctance of this court . . . to pass upon" the orders and rulings of the other judge he therefore "without a reading of the transcript or the instructions and entirely as a matter of form" denied the motion for a new trial. From the order denying a new trial and from the judgment the defendant appeals.

There are twenty-two specifications of error; but in his brief the appellant condenses these into five propositions; the verdict is contrary to the weight of the evidence; no competent proof of malice; no proof of damages and excessiveness of jury's award; two errors of the court in the instructions; and misconduct of plaintiff's counsel.

In 1926 the plaintiff, at that time sixteen years of age, was working for a short time on a threshing machine in which the defendant was interested. Two or three weeks thereafter the defendant paid him by check which check at first was drawn for $4 and when cashed and returned by the bank called for the payment of $8. The defendant claims plaintiff worked for him for one day and a quarter at $3 per day, that he drew the check for $4 and handed it to the defendant, that the defendant thereafter altered the check without his knowledge and consent so as to read $8. It was for this alleged alteration of the check the defendant had the plaintiff arrested for forgery in the third degree. It is the claim of the plaintiff that he worked for the defendant for two days and three quarters at $3 per day, thus, earning $8.25; that when he came to get his pay the defendant handed him a check for $4; that he told the defendant at that time there was an error, that he had

worked two days and three quarters and thereafter the defendant himself changed the check from $4 to $8 remarking he would keep the quarter. The amount had been written in words and figures, but the change was in the figures only. The crux of the case is who changed the check—is the plaintiff's version correct that the defendant changed it, or was it changed after it left the hands of the defendant? The evidence is undisputed, that about two weeks after the check was issued the defendant received it from the bank, shortly thereafter he sent word to plaintiff's father to see what could be done about it and gave him time to settle for the check ("before I make trouble I notified the old man" he says), and upon failing in this he went to the state's attorney, told the state's attorney he had issued a check for $4, had delivered it to the plaintiff, that when it was presented to the bank it had been changed from $4 to $8, that the plaintiff had changed it and wanted the state's attorney "to try and get the settlement." The state's attorney told him he could not make settlement but called in the plaintiff, plaintiff's father, and several other persons for investigation, and then told the defendant he had a proper case for criminal prosecution, and prepared the complaint. The defendant then took it to the justice of the peace, swore to it, and had the warrant of arrest issued.

In an action for malicious prosecution it is incumbent upon the plaintiff to prove want of probable cause, as well as malice on the part of the defendant in addition to the falsity of the criminal charge against him and a favorable termination of the criminal prosecution. See Mielke v. Rode, ante, 465, 226 N. W. 507. In proving want of probable cause he must show the falsity of the charge and also that the defendant had no reason to believe that it was true. In order to prove the falsity of the charge he was required to prove that he did not alter the check and in this respect the sole claim of the plaintiff was that the defendant himself in the presence of the plaintiff, changed the check as the result of the claim of the plaintiff for pay for two and three quarters days work instead of one day and a quarter. If the version of the plaintiff be correct then of course, the defendant had no grounds for believing plaintiff had changed the check as he must have known he changed it himself. Therefore the plaintiff in proving that he had not changed it proved that in this case the defendant had changed it, and that defendant knew of the falsity of the charge he had made.

Under a general denial the defendant may introduce evidence showing that he had acted under the advice of counsel for the purpose of proving probable cause. The defendant, in depending upon the advice of counsel as justification for his act in making complaint, is required to show he had made a full and truthful statement to the state's attorney of all of the facts which he knew or should have known in connection with the matter. If he changed the check himself he did not make a full and truthful statement, and therefore could not rely upon the advice of counsel. He would not have probable cause. It is unnecessary to set forth all of the testimony in the case. Defendant produced several members of his family who claimed to be present at the time the check was issued to testify as to the conversation which took place at that time; the plaintiff introduced testimony to show what took place at that time; there was testimony introduced by plaintiff to show he had worked for the defendant for two and three quarter days and there was testimony to the contrary. There was testimony introduced for the purpose of showing the relationship between the families and all in all there was a sharp and distinct conflict of testimony on the vital issues. The appellant says the version of the plaintiff is incredible and unbelievable. He says it is not conceivable that the defendant would at first write a check for $4 setting it forth in words and figures on the supposition the defendant had worked for him for a day and a quarter at $3 per day and then at the suggestion of the plaintiff, without an examination of his threshing books and records, alter the check himself by changing the figures $4 to $8 without changing the written part; or immediately upon getting the check from the bank communicate with the plaintiff's father about the alleged change trying to get him to adjust it, and when he failed therein go to the state's attorney in an attempt to get him to collect it, and only after all this failed had a warrant of arrest issued. The plaintiff says the defendant would not be giving him a check for $4 for a day and a quarter's work at $3 per day; but when he found plaintiff knew how long he had worked he changed the check to $8 retaining a quarter for himself and that the reason he tried to collect the $4 to compel the plaintiff to refund it was his desire to get the plaintiff into trouble owing to the fact that ill feeling existed between the families. The whole matter was submitted to a jury who found in favor of plaintiff's version, and therefore must

have found that the defendant himself changed the check, and afterwards instituted the criminal proceedings. This case differs from Mielke v. Rode, supra, recently decided, in this that in the latter case the defendant made a full and fair disclosure of all the material facts he knew or should have known and then had the advice of counsel. Here, the jury had evidence on which they could find there was not a truthful disclosure. There was sufficient evidence to take the matter to the jury; and their verdict in this respect is binding upon the court. It is for the jury to say which way the weight of the evidence is and after so declaring we cannot say the verdict is contrary to the weight of the evidence.

It is said there is no proof of damages. The arrest of the defendant on such a serious charge presumes damage. It is true that he waived a preliminary examination but he was compelled to stand trial in the district court and irrespective of the fact his father may be obligated to pay the expenses of counsel and also of the fact that plaintiff failed to prove that he himself paid counsel or is obligated to pay counsel the arrest and trial show damages. It was for the jury to determine, in its sound discretion, just what would be the amount of the damages.

Defendant says the verdict is excessive. It is difficult to determine just what is an excessive verdict in such a case as this. It is true the young man was never put in jail, nevertheless he was arrested and had to face trial for a felony on such a charge as would necessarily affect his reliability. If true, no one would care to entrust him with documents in which he had an interest and there can be no question but what he would receive a certain amount of notoriety which even a favorable determination would not destroy. It is not inconceivable that many acquaintances might believe him guilty even though acquitted by a jury. In the case of Scholl v. Schnebel (City Ct. Brooklyn) 29 N. Y. S. R. 676, 8 N. Y. Supp. 855, where a man was arrested on a charge of forging an endorsement on a note, was locked up for four hours, but subsequently the proceedings were dismissed, a verdict of $1,000 was held not excessive the defendant not having made a fair and full disclosure to counsel. In Thorp v. Carvalho, 14 Misc. 554, 36 N. Y. Supp. 1, where a man was arrested for attempting to get money by a forged order and was locked up for an hour and a half, a verdict for $1,000 was held not excessive. In Thomas v. Kerr, 137 Ill. App. 479,

a man was charged with intent to cheat by means of a false writing, was in custody several hours, was discharged at the hearing, and the disclosure to the counsel was not full and fair. It was held that a verdict of $500 was not excessive. See also Shong v. Stinchfield, 47 N. D. 495, 183 N. W. 268, infra. It is true the complaint does not make a direct demand for exemplary damages, but it is not necessary in the pleadings to claim exemplary damages by name. "When the complaint alleges, and the proof shows facts such as will warrant a recovery of exemplary damages, they need not be claimed by name and as such, but may be recovered under the claim for damages generally." See Shoemaker v. Sonju, 15 N. D. 518, 108 N. W. 42, 11 Ann. Cas. 1173. Under our statute § 7145 of the Compiled Laws, if "the defendant has been guilty . . . of malice actual or presumed" the jury may assess exemplary damages in an action for the breach of an obligation not arising from contract. The court instructed the jury regarding this class of damages and we must therefore take into consideration this element of exemplary damages in determining whether the verdict returned is excessive. While exemplary damages may not be considered favorably by courts nevertheless the statute permits their recovery. If the defendant deliberately changed the check himself and then swore to a complaint charging the plaintiff with forgery the act must have been wanton and malicious and of such a character as to show an evil disposition. The jury therefore would be justified in assessing exemplary damages. A verdict for $1,000 is not excessive where a young man of sixteen to eighteen years of age is charged with a felony of this nature. We cannot say that the verdict is excessive or shows influence of passion or prejudice.

It is said there was no competent proof of malice. To prove malice the plaintiff was not required to pursue any set form of procedure. Malice by our statute § 10,360 of the Compiled Laws, is defined as importing "a wish to vex, annoy or injure another person, or an intent to do a wrongful act." If the defendant changed the check himself, then swore to a complaint charging the plaintiff with doing it so as to have the plaintiff arrested he certainly intended to do a wrongful act, and must be presumed to have intended to injure the plaintiff. Malice is a question of fact for the jury to find from the circumstances in the case. It "may ordinarily be inferred by a jury from want of probable

cause." Kolka v. Jones, 6 N. D. 461, 473, 71 N. W. 558; Pickles v. Anton, 49 N. D. 47, 59, 60, 189 N. W. 684; Shong v. Stinchfield, 47 N. D. 495, 183 N. W. 268; Stewart v. Sonneborn, 98 U. S. 187, 25 L. ed. 116; Paddock v. Watts, 116 Ind. 146, 9 Am. St. Rep. 832, 18 N. E. 520; Davis v. McMillan, 142 Mich. 391, 3 L.R.A.(N.S.) 928, 113 Am. St. Rep. 585, 105 N. W. 862, 7 Ann. Cas. 854; Price v. Minnesota, D. & W. R. Co. 130 Minn. 229, 153 N. W. 536, Ann. Cas. 1916C, 267; McIntosh v. Wales, 21 Wyo. 397, 134 Pac. 274, Ann. Cas. 1916C, 273; Madison v. Pennsylvania R. Co. 147 Pa. 509, 30 Am. St. Rep. 756, 23 Atl. 764. This latter case says that this inference may be disproved by the other circumstances of the case. The jury, by finding the defendant himself changed the check and then afterwards swore that plaintiff had changed it, found want of probable cause, and thus could infer malice. In Kolka v. Jones, supra, this court held that "legal malice will support the action, and any unjustifiable motive constitute legal malice." Malice is the intentional doing of a wrongful act to the injury of another with an unlawful purpose. See Louisville & N. R. Co. v. Owens, 164 Ky. 557, 175 S. W. 1039; Freeland v. Southern R. Co. 70 S. C. 427, 429, 50 S. E. 12. Thus proof that the defendant never sincerely believed plaintiff guilty of the charge tends to show malice. Bitting v. Ten Eyck, 82 Ind. 421, 423, 42 Am. Rep. 505, 506. Commencing a criminal prosecution for the sole purpose of enforcing payment of a debt is such an act from which malice may be inferred alone, though the question is one of fact for a jury. See Peterson v. Reisdorph, 49 Neb. 529, 68 N. W. 943. Wisconsin holds the same in Lueck v. Heisler, 87 Wis. 644, 58 N. W. 1101. That court said: "The use of criminal prosecution to enforce payment of a debt constitutes malicious prosecution and will support a finding that it was without probable cause." In the light of the verdict there is ample proof of malice.

The alleged errors in the charge of the court consist that the court charged the jury as follows:

". . . if you find from the evidence that Mr. Bendewald did not make the alteration in the check, and that it was made by some one else; and you find that Mr. Bendewald, when he discovered the alteration of the check, believed that the check had been changed, as it was apparently, from four dollars to eight dollars; then Mr. Bendewald

was justified in believing that a crime, the crime of forgery in the third degree, had been committed.  And if he took the check and went to the state's attorney, who was the proper officer and laid before the state's attorney all of the facts that he knew about, fairly and honestly; and the state's attorney then advised him that the proper thing to do was to prosecute the plaintiff in this case, Christian Lux, for forgery in the third degree, and that Mr. Bendewald should make a criminal complaint in writing to start that prosecution, then Mr. Bendewald was justified in doing that, and the prosecution would be started by him with probable cause; . . ."

There were two other sections of the charge to the same effect.  It is claimed that this charge is erroneous in that it told the jury it was necessary for a man who thought he was injured to present the matter to the state's attorney before commencing criminal action and that it omitted the fact that a man had a right to commence criminal proceedings without consulting any lawyer, if the facts of the case justified it.  As the defendant says in his brief:

"The court instructed the jury that even though the defendant did not change the check himself before its delivery to plaintiff, still, in order to be exempt from liability it was necessary for him to present all of the facts to the state's attorney and that the state's attorney advise him to commence the criminal prosecution."

The other error concerned is that the court refused the following request for a charge.

"You are further instructed that the fact which is conceded, that the defendant when arrested and brought before the committing magistrate, waived his right to an examination before such magistrate, which is prima facie evidence that there was probable cause for his arrest."

Strictly speaking both points raised by the defendant are correct. Probable cause may exist independently of the advice of counsel.  See Sasse v. Rogers, 40 Ind. App. 197, 81 N. E. 590.  See also Florence Oil & Ref. Co. v. Huff, 14 Colo. App. 281, 59 Pac. 624; 38 C. J. 430. But though the charge to the court may have restricted the acts of the defendant in showing probable cause and though error may have resulted therefrom nevertheless it was error without prejudice.  The defendant does not contend that he undertook the commencement of criminal proceedings without consultation with the state's attorney.

His main defense is—truth of the charge and advice of counsel. It was one admitted fact, that he had gone and laid the case before the state's attorney. The court had that in mind when giving the charge. The charge was given in the light of the facts developed in the case. Doubtless standing alone, as an abstract statement of the law, it was erroneous; but viewed in the light of the case it could not possibly have done any damage. If the court had charged that the defendant could have instituted criminal proceedings without consulting counsel it would have had no bearing on the case. It was not in the case and defendant had made no attempt to do so.

It is a fact that the waiver of preliminary examination may be considered by the jury as raising a prima facie presumption for probable cause for the prosecution. Hess v. Oregon Baking Co. 31 Or. 503, 49 Pac. 803; 38 C. J. 412. It is equivalent to a finding by "the committing magistrate that there is probable cause to believe the defendant guilty." See Schoonover v. Myers, 28 Ill. 308, 312. Nevertheless the refusal to give this instruction was harmless. The real issue of fact before the jury was that the plaintiff had the burden of proof of showing the defendant himself made the change in the check. If the defendant did make the change then he had no probable cause for commencing a criminal prosecution charging the defendant with the change. So any inference to support probable cause, arising from waiver of a preliminary examination simply disappeared.

The remaining point charged is misconduct of the counsel for the plaintiff. This alleged misconduct consists of an attempt of the counsel for the plaintiff to present testimony showing that there was "bad blood" between the defendant and the plaintiff's parents. Almost invariably objections to this attempt were sustained by the court. The court admonished the jury that where a question was asked and objection sustained the matter was not to be considered by the jury. In the argument to the jury counsel on both sides repeatedly interrupted each other taking exceptions to statements that were being made. The exceptions taken by the counsel for the defendant seem to refer to arguments showing ill feeling between the two families. The statement made by the counsel is not set forth in full and we cannot say to what extent the counsel went, and the court consistently required counsel to keep within the record and to argue from the evidence introduced and

that alone. There appear to be several counsel on each side. Each counsel was objecting whenever he deemed it advisable and sometimes two counsel would be objecting at the same time. It was difficult for the court to keep track of the various objections being raised and to rule on each. Nevertheless the court was attempting to keep the counsel on both sides within the range of the case and we see nothing especially harmful shown by the record from the fragments of the comments which are before us. It appeared the court admitted some testimony showing the relationship between the defendant and the parents of the plaintiff as bearing upon the credibility of the defendant. Some testimony was offered to show that a judgment for slander was secured by plaintiff's father against the defendant but this was stricken out, and the jury cautioned not to consider it. The defendant admits the court admonished the jury but says:

"It is true the court mildly admonished the jury, but it is self-evident that the jury must have gotten the impression of bad blood existing between the defendant and plaintiff's parents, which, under the law, was obsolutely incompetent and immaterial and clearly prejudicial."

The court in admitting the testimony limited it to credibility. Appellant says:

"It was error on the part of the court to even admit it as bearing on credibility, because once it got before the jury, the jury considered it for all purposes."

We cannot assume the jury considered it for any other purpose than what it was admitted. No reversible error being shown the judgment is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.